WILLIAM F. HUNNICUTT,         ) Civil Action No. 3:08-2589-JFA-JRM
                                 )
          Plaintiff,          )
                                 )
         vs.              ) **REPORT AND RECOMMENDATION**
                                 )
SC DEPARTMENT OF REVENUE,      )
                                 )
                                 )
         Defendant.       )
_____)

     Plaintiff, William F. Hunnicutt ("Hunnicutt"), commenced this action in the Court of Common Pleas for Richland County on June 18, 2008. Defendant,[1] the South Carolina Department of Revenue ("DOR") removed this action to this court on July 18, 2008. Hunnicutt alleges claims under the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C.A. §§ 4301-4333 ("USERRA").[2] On June 26, 2009, DOR filed a motion for summary judgment. Hunnicutt filed a memorandum in opposition[3] on August 13, 2009, and DOR filed a reply on August 31, 2009.

## SUMMARY JUDGMENT STANDARD

     When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the

---

[1]Richard "Ricky" Taylor was also a defendant to this action. On September 24, 2008, the parties entered a stipulation of dismissal without prejudice as to Taylor. See Doc. 14.

[2]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[3]In his complaint, Plaintiff also brought a claim under the Age Discrimination in Employment Act. In his memorandum in opposition to summary judgment, Plaintiff withdrew this claim. Plaintiff's Opp. Mem. at 2.

evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra.

Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

**FACTS**

1.      Hunnicutt is a fifty-two year old male. Plaintiff's Decl., Para. 1.

2.      Since 1985, Hunnicutt has been a member of the South Carolina National Guard ("Guard").[4] He holds the rank of Sergeant First Class which represents the grade of E-7. He is the Battalion Communications Sergeant, Headquarters Company, for a combat services support battalion. In this position, he supervises and evaluates the job performance of from six to fifteen soldiers who report directly to him. Plaintiff's Decl., Paras. 2-3.

3.      Hunnicutt has always received "outstanding" evaluations in his position with the Guard. His national military awards include three United States Army Commendation Medals, one United States Army Achievement Medal, and numerous State National Guard awards. Plaintiff's Decl., Para. 5. His service in the Guard at times requires his deployment outside of South Carolina.

4.      In 1988, Hunnicutt began employment with the DOR as a Tax Examiner and progressed through each of the Tax Examiner positions - A, B, C, and D (highest), which involved

---

[4]Beginning in 1974, Hunnicutt served two years active duty in the United States Army. He rejoined the military as a Guard member.

learning about individual, partnership, and fiduciary taxes. Plaintiff's Dep. 33-36; Plaintiff's Decl., Paras. 7-8.

5.  Hunnicutt was promoted to Senior Regulatory Officer, an assistant supervisor position (supervising approximately seven regulatory officers), over DOR's Video Poker Section in approximately 1998. Plaintiff's Decl., Para. 9.

6.  After video poker was declared illegal in 2000, Hunnicutt was placed in DOR's Individual Audit Section as a Tax Examiner D. Approximately one year later he was offered a position as Tax Examiner D in the newly developed Nexus/Discovery ("Nexus") Unit, which dealt with taxation of foreign (outside of South Carolina) corporations. Plaintiff's Dep. 43 and 60; Plaintiff's Decl., Para. 10.

7.  The supervisor of the Audit Division (which included the Nexus Unit) was Robby Anderson ("Anderson"). See Rogers Dep. 8.

8.  John Rogers ("Rogers")[5] was the Nexus Unit Supervisor. He had promoted the idea of creating a Nexus Unit in approximately 1990. In 2001, Rogers retired, but was rehired as the supervisor under the Teacher Employment Retirement Incentive ("TERI") program (see S.C.Code Ann. § 9-1-2210). Rogers Dep. 7-8.

9.  The Nexus Unit generally consisted of only two employees, the supervisor and one tax analyst, but for short times had an additional employee (a tax examiner or tax analyst). Hunnicutt says he supervised much of these employees' work, but did not complete employee evaluations. Plaintiff's Decl., Para. 13.

---

[5]Rogers served in the United States Navy for four years and for thirty years in the Navy Reserve. Rogers Dep. 44.

10. Hunnicutt was promoted from Tax Examiner D to Tax Analyst A in the Nexus Unit in November 2004. He was later promoted to Tax Analyst B. Plaintiff's Dep. 48, 52; Plaintiff's Decl., Para. 12.

11. Hunnicutt received "exceeds expectations" overall ratings on performance reviews in May 2005 and April 2006. Rogers Dep., Plaintiff's Exs. 1 and 2.

12. When Rogers reached the end of his five-year TERI period in March 2006, Anderson asked Rogers to stay on as a temporary employee to continue to supervise the Nexus Unit. Rogers Dep. 7-9, Plaintiff's Dep. 63.

13. Ricky Taylor ("Taylor") became the Administrator of the Audit Division (and Rogers' supervisor) in approximately May 2006. See Taylor Dep. 7-8.

14. Taylor states that in early January 2007, he met with Rogers and told Rogers that he was not comfortable leaving the Nexus Unit under the supervision of a temporary employee due to the transience and uncertainty of temporary employment and the importance of the Nexus unit supervisor position. Taylor stated that he intended to advertise the supervisor's position and fill it with a permanent employee. Rogers asked if he could stay on in a temporary capacity as a Nexus auditor once the new supervisor was selected and Taylor said he could. Rogers Dep. 9-10; Taylor Dep. 7-9, 38-39.

15. Shortly before the position was posted, Hunnicutt was instructed by Rogers to move his desk to a new work station in the Nexus Unit. Before the move, Rogers and Hunnicutt sat in spaces directly across from each other and could talk easily. After the move, Hunnicutt was no longer in visual site of Rogers. Plaintiff's Decl., Para. 25.

16. From January 26 to February 5, 2007, the position of Nexus supervisor (to replace Rogers) was posted internally. Plaintiff's Dep. 64-69 and Ex. 1; Plaintiff's Decl., Para. 18.

17. The job posting described the Nexus supervisor duties as:

> manages, plans, coordinates and evaluates the job responsibilities and compliance projects of personnel assigned to the Discovery Section. This includes conducting extensive research in multiple tax areas to identify entities doing business in South Carolina, but are not filing required tax returns. Reviews submitted delinquent tax returns and coordinates the registration of new taxpayers. Refers appropriate files for field examination. Conducts conferences and/or investigations with taxpayers, attorneys, certified public accountants, state and local tax officials, and others on multi-state tax jurisdictional issues and renders decisions. Administers the Department's Voluntary Disclosure Program. Manages nexus compliance program projects utilizing all resources available including the Data Warehouse to discover and identify non-filers. Processes and/or answers a wide variety of correspondence and inquiries from both internal and external customers regarding multi-state tax issues. Coordinates the hiring, training, and education needs of the section which includes timely review of employee performance.

Plaintiff's Dep., Ex. 1. The minimum training and experience requirements were a bachelor's degree in business administration and four years of tax-related experience. Nexus school certification was highly preferred. Id.

18. Hunnicutt signed his application for the position on January 30, 2007. Plaintiff's Dep., Defendant's Ex. 3.

19. Four DOR employees applied for the position, but one did not satisfy the minimum experience requirement. Taylor Dep. 10, 13; Darold Ratliff Dep. 11-12. The other three DOR employees, each of which had been with the agency for more than fifteen years, were chosen for interviews. The three interviewees were Hunnicutt; Linda May ("May"), a CPA who worked as a tax analyst in the Research and Review section; and Joy Causey ("Causey"), the supervisor of DOR's Corporate Income section since July 1999 (who is also a Certified Public Manager). Plaintiff's Dep. 81-83; Rogers Dep. Ex. 4.

20.      On approximately February 8, 2007,[6] Taylor, with Rogers present, interviewed Hunnicutt, May, and Causey for the Nexus supervisor position. Each was asked the same series of questions.[7] Plaintiff's Dep. 83-84; Taylor Dep. 23-30 and Exs. 1, 2, and 3. Hunnicutt had a sinus infection, was taking medically prescribed antibiotics, and felt ill on the day of the interview. Plaintiff's Aff, Para. 19.

21.      Hunnicutt was deployed to Arizona, as part of the Arizona Border Mission, on February 9, 2007. Plaintiff's Decl., Para. 18.

22.      After the interviews, Taylor scored each interviewee on a DOR Interview Evaluation Form. Causey received an overall score of 35 (all scores are out of 35), May received 29, and Hunnicutt received 22. Taylor Dep. 25-29 and Defendant's Exs. 1, 2, and 3.

23.      After DOR's Human Resources office approved Causey's selection, Taylor contacted May and directed Rogers to contact Hunnicutt to inform them of Causey's selection before it was announced publically. Taylor Dep. 29-32; Rogers Dep. 42-44. Rogers contacted Hunnicutt's wife and asked her to have Hunnicutt, who at that time was in Arizona on Guard duty, call Rogers when he had an opportunity. Hunnicutt called Rogers that night. Rogers Dep. 42-44.

24.      Hunnicutt states that Rogers told him that Rogers had also been "screwed" by the DOR when jobs Rogers was entitled to were given to less-qualified persons. Plaintiff's Decl., Para. 21. Rogers denies stating this and says that he told Hunnicutt that Causey's interview had been

---

[6]Taylor could not recall the exact date of the interviews. Hunnicutt asserts that he was interviewed on February 8, 2009. Plaintiff's Decl., Para. 18. A form recommending Causey for the position (after all the interviews were conducted) was signed on February 9, 2007. Rogers Dep., Ex. 4.

[7]The questions asked are included in Plaintiff's Ex. 4 to Rogers' deposition (Bates Nos. 55-56).

outstanding and Taylor selected her because Taylor thought she was the best qualified person to lead the Nexus Unit in the direction he wanted to take in the future.  Rogers Dep. 42-43.

25.    After Hunnicutt returned from Guard duty, Hunnicutt wrote an undated letter to Taylor, which he copied to South Carolina Governor Mark Sanford, South Carolina Senator Nikki Setzler, South Carolina Representative Kenny Bingham, DOR Director Ray Stevens, and DOR Assistant Director Harry Cooper, asking for an explanation for his not being promoted. Plaintiff's Dep., D's Ex. 4.

26.    Taylor, Darold Ratliff ("Ratliff"),[8] and Hunnicutt met sometime after the date of the letter. Hunnicutt states that Taylor stayed in the meeting for only a few minutes and informed Hunnicutt that his (Taylor's) attorney told him that he did not have to tell (Hunnicutt) anything else and then left promptly.  Plaintiff's Dep. 96.[9]

27.    Hunnicutt claims that Ratliff told him that they (meaning DOR officials) knew they were doing him wrong by giving the job to Causey.  Plaintiff's Dep. 96-97, Plaintiff's Decl., Para. 22.  Ratliff denies this statement and testified that he told Hunnicutt it was a non-grievable issue and Hunnicutt's only recourse would be to file with the South Carolina Human Affairs Commission ("SCHAC"), which Hunnicutt had the right to do if he thought he was wronged. Ratliff Dep. 26.

_____

[8]Ratliff is the Employee Relations Manger for DOR.  He reports to Nancy Wilson, the administrator of the Human Resources Planning and Development Division (the top human resources position within DOR).  Ratliff Dep. 9.

[9]Taylor denied making this statement and states that he did not have an attorney.  Taylor Dep. 34-35.

28.     After Causey was hired, she was placed in Rogers' old work space and Rogers sat directly across from her. Rogers remained in the Nexus Unit for approximately one year after Causey began as Nexus Unit supervisor. Plaintiff's Decl., Paras. 24, 26-27.

29.     On June 11, 2007, Hunnicutt filed a charge of discrimination with SCHAC and the Equal Employment Opportunity Commission ("EEOC") alleging he had been denied promotion to the Nexus supervisor's position because of his age and sex. SCHAC issued a "no cause" determination and right-to-sue notice on March 28, 2008. On April 24, 2008, the EEOC adopted SCHAC's "no cause" determination and issued its own Dismissal and Notice of Rights. Plaintiff's Dep. 110, 116 and Defendant's Exs. 5-7.

## DISCUSSION

Hunnicutt alleges that DOR promoted a less-qualified female and failed to promote him based on his sex in violation of Title VII. He also claims that DOR did not promote him because he is a member of the Guard. DOR contends that its motion for summary judgment should be granted because Plaintiff fails to establish his case under Title VII or USERRA.

### A.    Title VII

Hunnicutt alleges that DOR discriminated against him based on his sex in violation of Title VII by selecting a female employee for the Nexus supervisor position and failing to promote him. DOR contends that Hunnicutt fails to establish his prima facie case of discrimination; it has articulated legitimate, nondiscriminatory reasons for its actions; and Hunnicutt fails to show pretext.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed

under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof[10] of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.

A plaintiff establishes a prima facie case of discriminatory failure to promote under Title VII by showing:

(1)     he is a member of a protected group,

(2)     he applied for the position in question,

(3)     he was qualified for the position, and

(4)     he was rejected under circumstances giving rise to an inference of unlawful discrimination.

Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The burden of establishing a prima facie case is not an onerous one. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case,[11] the employer bears

---

[10]Hunnicutt has not presented any direct evidence of sex discrimination. The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

[11]Title VII prohibits discrimination against all groups, including majority groups (such as Caucasians) which have been historically favored. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 279-280, 296 (1976). Courts are split on whether a non-minority plaintiff is entitled to the same inference of discrimination as a minority plaintiff when he or she proves a prima facie case. The Sixth, Eighth and District of Columbia Circuits have held that a reverse discrimination plaintiff only raises an inference of impermissible racial discrimination when he or she both satisfied the McDonnell Douglas prima facie test and also presents evidence of background circumstances to support the suspicion that the defendant discriminates against whites. See Murray v. Thistledown
(continued...)

the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the employer provides the required evidence of a nondiscriminatory reason for the action, a plaintiff must then show that the proffered reasons were a pretext for discrimination. <u>Id.</u> at 804; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).

### (1)    **Prima Facie Case**

The parties do not dispute that Hunnicutt can establish the first three prongs of his prima facie case. DOR argues that Hunnicutt cannot establish the fourth prong (that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination) because he cannot establish circumstances which support the suspicion that DOR is among those unusual employers who discriminate against the majority. The Fourth Circuit, however, has thus far declined to address the issue of whether a majority plaintiff (here a male) has a higher burden at this prong of his prima facie case than a non-minority (female) plaintiff. <u>See</u> <u>Lucas v. Dole</u>, 835 F.2d 532, 534 (4th Cir.1987); <u>see also</u> <u>Weeks v. Union Camp Corp.</u>, 215 F.3d 1323, 2000 WL 727771, at *6 n. 13 (4th Cir. 2000).

---

[11](...continued)
<u>Racing Club, Inc.</u>, 770 F.2d 63, 67-68 (6th Cir. 1985); <u>see also</u> <u>Donaghy v. Omaha</u>, 933 F.2d 1448, 1458 (8th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992); <u>Lanphear v. Prokop</u>, 703 F.2d 1311, 1315 (D.C.Cir. 1983). The Eleventh Circuit has held that a reverse discrimination plaintiff raises an inference of impermissible racial discrimination when he or she satisfied the <u>McDonnell Douglas</u> prima facie test. <u>See</u> <u>Wilson v. Bailey</u>, 934 F.2d 301, 304 (11th Cir. 1991).

There is no Fourth Circuit decision on this issue. In <u>Stock v. Universal Foods Corp.</u>, 817 F. Supp. 1300 (D.Md. 1993), <u>aff'd</u>, 16 F.3d 411 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 813 (1994), the District Court used the traditional <u>McDonnell Douglas</u> analysis. <u>Id.</u> at 1306. The Fourth Circuit upheld the District Court opinion on appeal in an unpublished opinion, but did not decide on the proper standard to be used. <u>See</u> <u>Stock v. Universal Foods Corp.</u>, 1994 WL 10682 *3, n. 2. Thus, for purposes of summary judgment, the undersigned finds that if Plaintiff establishes his prima facie case, he is entitled to this rebuttable presumption.

Hunnicutt argues that he has established the fourth prong of his prima facie case for a number of reasons including that he worked in the Nexus Unit for years, and unlike Causey knew intimately the tax he would be supervising if selected; Causey was not operationally familiar with the tax that the section administered and collected and needed "massive" on-the-job training by Rogers after she was selected; Plaintiff's work station was relocated away from Rogers shortly before the position was posted, raising a strong inference that Causey had been impermissibly pre-selected for the job; and Rogers stayed at DOR to train Causey. DOR does not appear to specifically address this prong in its reply memorandum. In the light most favorable to Hunnicutt, for purposes of summary judgment, the undersigned finds that Hunnicutt has established his prima facie case.

### (2) Legitimate, Nondiscriminatory Reason

DOR has articulated legitimate, nondiscriminatory reasons for not promoting Hunnicutt, that it chose Causey because she had eight years of management/supervisory experience with DOR, superior performance in the interview, and Certified Public Manager ("CPM") training and designation. See Defendant's Motion for Summary Judgment at 13.

### (3) Pretext

Hunnicutt claims that he has shown pretext[12] because: (1) Taylor's reasons for selecting Causey changed after he learned his decision was being challenged; (2) when Hunnicutt's Guard experience is considered, his experience is adequate to handle the supervisory aspects of the job; (3) Hunnicutt was required to interview a week early because of his military deployment, even though Taylor knew Hunnicutt was ill; (4) Taylor waited to post the position until Hunnicutt was

---

[12]"A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006).

preparing to be deployed (such that his focus was on his important mission with the United States Army rather than the interview, other interviewees had the advantage of being interviewed last while Hunnicutt was out of state, and the decision was made when Hunnicutt was out of town making it easier for Taylor to make an unfair and unsupportable decision); (5) Causey had no experience with the tax the Nexus Unit dealt with and collected and admitted that one should "know" a tax to be able to manage it properly; (6) Causey needed on-the-job training after she was selected and Rogers had to remain to train her; (7) the reason for the removal of Hunnicutt from his work location shortly before the job was posted is an issue of material fact; (8) Hunnicutt had high quality supervisory experience over soldiers conducting serious combat support missions that was known to, but ignored by Taylor and the DOR in its decision; (9) when the job description posted for the job is examined and the qualifications of the candidates are scrutinized, it is very difficult under any circumstance to find legitimate justification for the selection of Causey over Hunnicutt; and (10) the interview process was conducted in effect by only Taylor, it was a subjective interview with no checks or balances to insure it was performed in a nondiscriminatory manner, there was no team or panel, and there was no written test.  DOR contends that Hunnicutt cannot show that he was not selected because of his sex and he cannot demonstrate that the reasons for the selection of Causey are pretext for discrimination.   In the light most favorable to Hunnicutt, he fails to show pretext, as discussed further below.[13]

---

[13]Some of these "pretext" factors appear to apply to Hunnicutt's USERRA claim rather than his Title VII claims, but are all discussed in relation to his Title VII claim.

### (a)     <u>Changing Reasons for Selection</u>

Hunnicutt argues that he has shown pretext because DOR changed its reasons for selecting Causey instead of him.  He asserts he has shown that these reasons changed because Taylor wrote on his (Hunnicutt's) interview sheet that he was not selected because Causey had many years of DOR management experience and Hunnicutt's responses to questions were confusing; Taylor told him he was not selected for these reasons and added that Causey's CPM training was a factor; in its EEOC position statement, DOR asserted that Causey was selected because she had more supervisory experience, had a management certification that Hunnicutt did not possess, and interviewed better; and in its memorandum in support of summary judgment, DOR also argues that Hunnicutt's poor grammar and Causey's wide experience dealing with accountants and lawyers were other reasons for his non-selection.  DOR contends that it has consistently explained its choice of Causey based on her superior qualifications (including eight years experience supervising and managing DOR's corporate section), her CPM designation, and her outstanding interview.

Hunnicutt fails to show that any "changing reasons" for his non-selection are pretext for discrimination.  First, it does not appear that DOR has changed its reasons for why it chose Causey for the Nexus supervisor position.  Hunnicutt admits that Taylor told him that he was not chosen based on his poor interview, Causey's superior supervisory experience, and her CPM designation.  These reasons have not changed and Hunnicutt has not shown that they are false.  Hunnicutt does not deny that he performed poorly on the interview and that Causey has a CPM designation which he does not possess.  He has not shown that his supervisory skills were superior to those of Causey (as is discussed further below).

Even if the additional details asserted constitute different reasons, this is not a case where the first articulated reasons were abandoned in favor of more supportive reasons, nor has Hunnicutt

shown that any of the first articulated reasons for the decision are not credible.  In <u>E.E.O.C. v. Sears Roebuck & Co.</u>, 243 F.3d 846, 849-50 (4th Cir. 2001), the Fourth Circuit found that an employee showed pretext where the employer changed its story during the course of discovery and admitted that its earlier reason was inaccurate.  <u>Id.</u> at 849-50.  In <u>Dennis v. Columbia Colleton Medical Center, Inc.</u>, 290 F.3d 639, 646-647, the Fourth Circuit found that inconsistent post-hoc explanations for employment decisions were probative of pretext.  Where changing or different, but not inconsistent reasons are offered, however, no pretext has been found.  <u>See</u>, <u>e.g.</u>, <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 217 n. 7 (4th Cir. 2007)(no pretext where company told the employee and the court that employee was terminated for threatening to kill someone, but told a state agency that the employee was laid off to allow him to obtain unemployment benefits); <u>Baldwin v. England</u>, 137 Fed.Appx. 561, 563 (4th Cir. 2005)(varying explanations offered by employee's supervisors to explain their refusal to promote her did not constitute pretext where they did not contradict each other, but rather reflected various consistent reasons she could not be promoted); <u>see also</u> <u>Freeman v. North State Bank</u>, 282 Fed.Appx. 211 (4th Cir. 2008)(finding no pretext where employee was given a number of  explanations for the monetary differences in employee bonuses that varied in depth and detail, but were not materially inconsistent).

Even assuming that DOR is now asserting these additional reason for non-selection (review of DOR's motion for summary judgment reveals that the asserted reasons are Causey's superior supervisory experience, the candidates' interview performances, and Causey's CPM training and designation - <u>see</u> Defendants' Motion for Summary Judgment at 13), DOR has not abandoned its original reasons.  The assertion that Causey had wide experience with accountants and lawyers is experience she obtained on her Corporate tax supervisor job and thus appears to be based on DOR's previously advanced reason (her superior supervisory/management experience).  The Fourth Circuit

in Hux v. City of Newport News, 451 F.3d 311 (4th Cir. 2006), noted that "[o]nce an employer has provided a nondiscriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity ...." Id. at 315.

Hunnicutt argues that DOR's assertion that its decision was based in part on his "poor grammar" is inconsistent or not true based on his performance reviews (in which Rogers indicated that Hunnicutt was improving and any deficiencies would be improved upon quickly). In Hunnicutt's 2004-2005 performance appraisal, it was noted that "[h]e continues to work on improving his communication skills, especially in the area of writing letters to taxpayers. Although he has improved some, he still needs to improve the overall quality of his written correspondence." Rogers Dep., Plaintiff's Ex. 2. In Hunnicutt's May 2005 to April 2006 performance appraisal, it was noted that Hunnicutt needed some work on his writing and attention to grammar. Rogers Dep., Plaintiff's Ex. 1. Rogers opined that Hunnicutt still struggled with these areas. Rogers Dep. 13-15. Also, Rogers testified that he did not believe that Hunnicutt could not write a professional letter that would meet the standards of the DOR. Rogers Dep. 34. DOR also notes that the letter Hunnicutt sent to Taylor (and copied to elected officials) was full of grammatical and punctuation errors and Taylor's first name was misspelled (all of which Hunnicutt has not denied).

### (b) **Qualifications**

Hunnicutt claims he has shown pretext because he was better qualified or Causey was less qualified for the supervisor position. DOR contends that Hunnicutt's arguments fail because it is the employer's not the employee's prerogative to prescribe the qualifications for the job and it is the decisionmaker's assessment of the employee's qualifications that counts.

Hunnicutt appears to assert that DOR should have used different qualifications or stressed certain factors instead of the ones prescribed. Specifically, he appears to argue that DOR should not have put much emphasis on Causey's CPM certification and should have required prior Nexus Unit experience. It is, however, the employer's prerogative to prescribe the qualifications for a job. EEOC v. Federal Reserve Bank of Richmond, 698 F.3d 633, 671 (4th Cir. 1983), rev'd in part on other grounds, 467 U.S. 867 (1984). A Title VII plaintiff "cannot establish her own criteria for judging her qualifications for the promotion" but "must compete for the promotion based on the qualifications established by her employer." Anderson v. Westinghouse Savannah River Co., 406 F.3d at 269.

Hunnicutt appears to allege that he was better qualified than Causey because he had worked in this Nexus tax area, and he had sufficient supervisory experience. Causey and Hunnicutt both appear to be at least minimally qualified for the position of Nexus supervisor, as they both possessed the required degree in business administration (or a related field) and four years of tax-related experience. They also both had the "highly preferred" Nexus school certification. See Hunnicutt Dep., Ex. 1 (Position Vacancy Notice) and Ex. 3 (Plaintiff's application); Rogers Dep., Ex. 4 (Causey's job application and resume). Hunnicutt cannot rely on his qualifications to establish pretext because he has not presented evidence that would allow a reasonable jury to conclude that his qualifications were demonstrably superior to that of Causey. The Fourth Circuit has stated that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Heiko, 434 F.3d at 261-62. But where "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the

employer." Id. at 261 (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 649 & n. 4 (4th Cir. 2002) (emphasis added); Evans, 80 F.3d at 960).

Hunnicutt argues that when his military supervisory experience as well as Nexus supervisory experience is considered, his supervisory experience is superior. Review of his Nexus supervisor application, however, reveals that Hunnicutt did not describe any supervisory experience on his application or complete the "number supervised" section pertaining to either his Guard or DOR jobs (see Plaintiff's Dep., Ex. 3). See Anderson v. Westinghouse Savannah River Co., 406 F.3d at 271-272 (a plaintiff cannot show pretext based on failure of selecting official to consider information about her qualifications that were not brought to the selecting official's attention). Hunnicutt asserts, citing his performance appraisal, that he supervised the short-term employees in the Nexus Unit. The appraisal, however, only mentions that Hunnicutt "successfully mentors our newest employee..." Further, Rogers testified that while Hunnicutt answered these employees' questions, served as a mentor, and assisted in training, these employees also came to Rogers with questions and Rogers was their supervisor, not Hunnicutt. Rogers Dep. 16-17 and Plaintiff's Ex. 1. Plaintiff also appears to argue that he should have received the job because he was already doing it and received good performance reviews. Rogers (who held the position for seven years), however, explained that while Hunnicutt was a good employee, Hunnicutt did not perform the Nexus supervisor's duties, functioning instead as an analyst, which is not a management-level position. See Rogers Dep. 23-33, 35-37.

Additionally, Hunnicutt's argument that he was the best candidate, based on his own self-assessment, fails to establish pretext as it is the employer's perception and not the employee's perception, that is controlling. See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Further, courts do not sit as super personnel departments second guessing an employer's perceptions of an

employee's qualifications.  <u>Smith v. University of North Carolina</u>, 632 F.2d 316, 345-46 (4th Cir.1980); <u>see also</u> <u>Evans</u>, 875 F.Supp. at 1120.

Contrary to Hunnicutt's assertions that Rogers remained at DOR to train Causey because she did not know the Nexus tax area, Rogers denied that one of his main roles was to train Causey and states that although he assisted her in some of the nuances of the job, she "took charge the first few days she was in the unit."  Rogers Dep. 10-11.  Taylor testified that the last year Rogers was the Nexus supervisor the DOR collected somewhere between five and six million dollars, the next year (the first year Causey was supervisor) it collected approximately thirteen million, and the next year it collected around ten million dollars (or double the collection from the last year Rogers was in charge).  Taylor Dep. 39-40.  Additionally, Taylor and Rogers testified as to the qualities required of a Nexus supervisor (including leadership, an ability to communicate effectively inside and outside DOR, creative and innovative thinking, and an ability to represent DOR on a state, regional, and national level) and stated that Casuey strongly demonstrated these qualities in her eight years as a supervisor of the Corporate section.  <u>See</u> Taylor Dep. 17-22, 26-30, 38-40, 48-49; Rogers Dep. 22-37.

### (c)      **Preselection**

Hunnicutt asserts that the moving of his work space shows that Causey was preselected for the Nexus supervisory position.  DOR denies preselection, but argues that preselection which is not motivated by an impermissible factor is not unlawful.

Preselection, even if accompanied by subsequent manipulation to guarantee that the preselected candidate gets the position over more qualified candidates, does not equate automatically to discrimination.  Preselection works to the detriment of all applicants, regardless of their race, age, or sex.  <u>Anderson v. Westinghouse Savannah River Co.</u>, 406 F.3d at 271; <u>Blue v. United States Dep't of the Army</u>, 914 F.2d 525, 541 (4th Cir.1990). While preselection shows that the selection process

was unfair, it "does not by itself prove racial discrimination." <u>Blue</u>, 914 F.2d at 541; <u>see</u> <u>Oates v.</u>

<u>District of Columbia</u>, 824 F.2d 87, 93 (D.C.Cir.1987) ("An ill-informed motivation, or even an illegal

motivation, is not necessarily a discriminatory one...."). "Title VII does not ensure the best will be

selected-only that the selection process will be free from impermissible discrimination." <u>Casillas v.</u>

<u>United States Navy</u>, 735 F.2d 338, 344 (9th Cir.1984). Without some evidence that Taylor's alleged

pre-selection of Causey was based on her sex (which Hunnicutt has not shown),[14] Hunnicutt has no

claim.

### (d)    **Affirmative Action**

Plaintiff also argues that DOR had an affirmative action plan in place,  white

females were underutilized, and DOR's selection of a male would have to be justified such that DOR

picked a white female to avoid such justification.  DOR denies that Causey was selected because of

the affirmative action plan and also argues that even if this was asserted as a reason, it would be

Hunnicutt's burden to show that the plan is invalid, which he has not done.

Title VII does not prohibit all affirmative action plans.  <u>See</u> <u>United Steelworkers of Am.,</u>

<u>AFL-CIO-CLC v. Weber</u>, 443 U.S. 193, 200-08 (1979); <u>Johnson v. Transp. Agency, Santa Clara</u>

<u>County, Cal.</u>, 480 U.S. 616, 626 (1987). An employer's demonstration of the existence and

application of an affirmative action plan constitutes a legitimate, nondiscriminatory reason under the

<u>McDonnell Douglas</u> framework.  <u>See</u> <u>Johnson</u>, 480 U.S. at 626. Thus, if an employer asserts its

compliance with an affirmative action plan as its legitimate nondiscriminatory reason, the burden

then shifts back to the plaintiff to show that the plan is invalid.  Here, even if DOR had asserted

---

[14]Hunnicutt has also not shown that Causey's pre-selection was based on his military service.

compliance with an affirmative action plan as its legitimate, nondiscriminatory reason for hiring Causey (which it has not), Hunnicutt has not shown that the plan is invalid.

### (e) Flawed Selection Process

Hunnicutt argues that he has shown pretext because the selection process was flawed, including that there was only one decisionmaker (Taylor) and no interview panel, there was no written test, and the decision was based on subjective factors. DOR contends that the use of subjective factors such as leadership and communication does not show evidence of pretext. It also provides that Rogers sat in on the interviews and concurred with Taylor's opinion that Causey was the best-qualified candidate (see Rogers Dep. 22-23, 33-39).

Hunnicutt fails to show that the interview/selection process was inherently flawed or was pretext for discrimination. The Fourth Circuit has found that the presence of subjectivity in the evaluation of employees is itself not a grounds for challenging those evaluations. See Vaughan v. MetraHealth Cos., Inc., 145 F.3d 197, 204 (4th Cir. 1998), abrogated on unrelated grounds, Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000); see also Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995)(employer, in deciding not to promote employee, could take into account both objective and subjective factors, including interpersonal skills and ability to lead a team).

### (f) Admissions of Unlawful Animus

Hunnicutt argues that he has shown pretext because Rogers said that he had "also" been "screwed" by DOR when jobs to which he was entitled were given to lesser-qualified persons (Plaintiff's Decl., Para. 21). In his deposition, however, Hunnicutt stated that Rogers told him that Rogers applied for positions that Rogers thought Rogers should have gotten but did not. Plaintiff's Dep. 114. Hunnicutt appear to add to this in his declaration. He also testified that Ratliff

said "they" knew "they" were doing Hunnicutt "wrong" by selecting Causey and Hunnicutt would have to either accept the decision or sue. See Plaintiff's Dep. 96-97. Assuming, in the light most favorable to Hunnicutt that these statements were made, there is no indication that they mention or even hint at Hunnicutt's gender or military status. At most they are opinions, not admissions, and these statements fail to rise to the level of pretext. See Hill v. Verizon Maryland, Inc., 2009 WL 2060088, *8 (D.Md. July 13, 2009)(unpublished)(supervisor's off-the-cuff remark to ADA plaintiff that plaintiff had "a good EEO case" against the company was an opinion, not an admission, and did not constitute evidence of discrimination); see also Hill v. Quantum Resources Corp., 1991 WL 152442, 940 F.2d 652 (4th Cir. 1991)(unpublished)(summary judgment affirmed in ADEA case where plaintiff's proof consisted of her own assertions and "a single ambiguous statement that possibly could be construed as discriminatory").

### (g)     Job Posting/Interview Timing

Hunnicutt contends that there was a rush to post the job and interview him prior to his going on Guard duty, which shows pretext. Taylor, however, denied knowing about Hunnicutt's military training commitment prior to deciding to post the job. He testified that once he learned of this, he pushed to move the process along to make sure that Hunnicutt could apply and interview for the job. Taylor Dep. 22-23. Rogers testified that he told Taylor about Hunnicutt's upcoming leave after he learned that the job was going to be posted. Rogers Dep. 41-42. Hunnicutt claims that he was put at a disadvantage because he interviewed earlier than the other candidates. Taylor testified that he did not know what day he conducted the interviews, but when asked if he "made sure that the job was posted and the interviews were conducted while [Hunnicutt] was still in town," he replied "yes." Even if the candidates were interviewed on different days, the time period was not long as shown by Hunnicutt's assertion that he was interviewed on February 8, 2007,

22

(Plaintiff's Decl., Para 18) and the fact that the form Taylor filled out after all the interviews (in which he recommended hiring Causey for the position) is dated February 9, 2007. Rogers Dep., Ex. 4 - Bates No. 52.

Although Hunnicutt claims Taylor made him interview even though he had a sinus infection, he has not shown that this violated Title VII (or USERRA), that the outcome would have been different if he interviewed at a different time, or shown how this adversely affected the decision. Hunnicutt also appears to argue pretext because the selection occurred and he was informed of the decision while he was on Guard duty. He fails, however, to show that there was anything more needed from him prior to the selection or how his non-selection was affected by his leaving town after the interview. While it may not have been the most sensitive thing to tell him of the selection of Causey while he was on Guard duty, he fails to show that this constituted pretext.

## B. __USERRA__

Hunnicutt claims that he was discriminated against in violation of USERRA because his military service or obligation was a motivating factor in not promoting him. He reasserts the same arguments advanced in his Title VII claim. Hunnicutt specifically argues that he has shown discrimination because of the timing of the posting/interviews for the Nexus supervisor position, Taylor's failure to consider his Guard supervisory experience, and the fact that he was told of Causey's selection while he was in Arizona. He also asserts that approximately six months before the job was posted, Taylor asked him to consider transferring to DOR's Foreign Audit Section and said the position would require travel out of town for about the same amount of time Hunnicutt traveled for the Guard. Plaintiff's Decl., Para. 25. Hunnicutt claims that this shows that Taylor did not like that he took time off for Guard duty. DOR contends that Hunnicutt fails to establish that his status as a member of the Guard was a motivating factor in the decision not to select him for the

position awarded to Causey, and that it selected Causey for reasons that were not based on Hunnicutt's protected status.

USERRA prohibits an employer from discriminating against an employee who is a member of the armed forces of the United States, including the Guard, because of the employee's military status and/or obligations. See 38 U.S.C. § 4311(a)("A person who is a member of...a uniformed service shall not be denied ... promotion ... by an employer on the basis of that membership ... or obligation."). "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." Hill v. Michelin N. Am., Inc., 252 F.3d 307, 312-13 (4th Cir. 2001). An employer is considered to have engaged in prohibited action if his military status "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service[.]" 38 U.S.C. § 4311(c).

"An employee proceeding under § 4311 has the burden of proving that the employer discriminated against him or her based on a status or activity protected under USERRA." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 303 (4th Cir.2006). "Circumstantial evidence will often be a factor in these cases, for discrimination is seldom open and notorious." Sheehan v. Department of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). Discriminatory motivation may be inferred from a variety of factors including:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reasons and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Sheehan v. Department of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

In the light most favorable to Hunnicutt, he has met his burden to show that his protected status was a motivating factor in the decision to not promote him. Specifically, the posting of the Nexus supervisor position appears to have been close enough in time to Hunnicutt's military duty to establish this.

"If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer, allowing the employer to avoid liability only if 'the employer can prove that the action would have been taken in the absence of' the employee's military status." Hill v. Michelin North America, Inc., 252 F.3d at 312; see also Sheehan, 240 F.3d at 1014 (burden shifts "to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action"). Thus, the DOR must prove, by a preponderance of the evidence, that the action would have been taken despite Hunnicutt's protected status. See Sheehan, 240 F.3d at 1014.

DOR has met this burden. It articulated that it promoted Causey rather than Hunnicutt because she had more supervisory experience, Hunnicutt interviewed poorly, and Causey had obtained CPM certification. As discussed above, in reference to Hunnicutt's Title VII claim, Hunnicutt has not shown that these reasons are false or pretext for discrimination.

## CONCLUSION

Based the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 24) be **granted.**

Joseph R. McCrorey
United States Magistrate Judge

February 26, 2010
Columbia, South Carolina