IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| William F. Hunnicutt, | ) | C/A No.: 3:08-2589-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SC Department of Revenue and Richard "Ricky" Taylor in his individual capacity, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court for review of the Magistrate Judge's report and recommendation ("Report") [dkt. # 36] on defendant South Carolina Department of Revenue's ("DOR") motion for summary judgment [dkt. # 24] against plaintiff William F. Hunnicutt ("Hunnicutt"), made in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g) (D.S.C.).

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a <u>de novo</u> determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a <u>de novo</u> or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

<u>Wallace v. Housing Auth. of the City of Columbia</u>, 791 F. Supp. 137, 138 (D.S.C. 1992)

(citations omitted).

I.   Factual and Procedural Background

Between January 26 and February 5, 2007, DOR internally posted a job opening for supervisor of the Nexus and Discovery Section ("Nexus") of the DOR. The posting listed job duties including the coordination, management, and supervision of Nexus projects and personnel, administration of the Nexus Voluntary Disclosure Program, and interaction with various individuals both in and out of government, among other duties. (Def. Mot. Summ. J. Ex. 1.) The job required, at a minimum, "a bachelor's degree in business administration or a related field and four (4) years of tax related experience." (Id.) Four individuals applied, though only three were considered as one applicant did not meet the minimum requirements.

Ricky Taylor ("Taylor"), Administrator of the Audit Division, and John Rogers ("Rogers"), then supervisor of Nexus, conducted the interviews, with Taylor as the decision-maker and Rogers participating in an advisory capacity. Hunnicutt, Joy Causey ("Causey"), and Linda May interviewed for the Nexus supervisor position, each had been with DOR for at least fifteen years. Taylor and Rogers interviewed Hunnicutt on February 8, 2007, and on February 9, 2007, Hunnicutt deployed to Arizona to fulfill an approximately two-week obligation with the National Guard. While on deployment, Rogers contacted Hunnicutt to inform him that Taylor selected Causey to fill the position. Upon his return to South Carolina, Hunnicutt drafted and distributed an undated letter to Taylor, which he copied to

2

South Carolina Governor Mark Sanford, South Carolina Senator Nikki Setzler, South Carolina Representative Kenny Bingham, DOR Director ray Stevens, and DOR Assistant Director Harry Cooper, seeking an explanation for his not being selected for the Nexus supervisor position. Darold Ratliff ("Ratliff"), DOR's Employee Relations Manager, Taylor and Hunnicutt met sometime after the distribution of the letter, where Hunnicutt alleges Taylor refused to provide further explanation of his decision and stated that "my attorney says I don't have to tell you anything else," before promptly leaving. (Pl. Dep. 96:24–25.) Upon Taylor's abrupt departure, Hunnicutt alleges that Ratliff told him that "they know they done you wrong and they ain't going to do anything about it" and advised Hunnicutt to either "suck it up" or "take it to Federal Court." (Pl. Dep. 97:10–16.)

Hunnicutt elected to file a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"), and alleged that he was denied promotion to Nexus supervisor because of his age and sex. SCHAC issued a "no cause" determination and right-to-sue notice on March 28, 2008. On April 24, 2008, the EEOC adopted SCHAC's determination and issued its own Dismissal and Notice of Rights. Hunnicutt filed suit against DOR and Taylor, in his individual capacity, in the Richland County Court of Common Pleas on June 16, 2008, alleging claims pursuant to the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (2006), the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4333 (2006); and the Age Discrimination in Employment

3

Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. (2006). DOR thereafter removed the case to the United States District Court for the District of South Carolina on July 18, 2008. Taylor is no longer a party to this suit by virtue of a joint stipulation of dismissal [dkt. # 14].

DOR filed its motion for summary judgment on June 26, 2009, which the parties fully briefed. In his response, Hunnicutt abandoned his claim pursuant to the ADEA. The Magistrate Judge issued a detailed and comprehensive Report recommending that DOR's motion for summary judgment be granted, to which Hunnicutt has lodged a number of objections. Specifically, Hunnicutt objects to: (1) the burden of proof employed by the Magistrate Judge in the Report in evaluating the USERRA claim; (2a) the lack of weight given the timing of the interview; (2b) the Report's finding that all interviews occurred the same day; (3a) the lack of weight given Taylor's knowledge of Hunnicutt's deployment; (3b) the Magistrate Judge's alleged acceptance of DOR's reason for the timing of the interview; (4) the lack of weight afforded a conversation between Taylor and Hunnicutt; (5) the lack of weight given to Hunnicutt's change in office location; (6) the Report's failure to find that Hunnicutt possessed substantial supervisory experience; (7) the Report's failure to view Hunnicutt's disclosure that he served as Sergeant First Class in a section of six to fifteen soldiers as evidence of supervisory experience; (8) the Report's failure to infer disadvantage to Hunnicutt from the timing of the interview; (9) the Report's misconstruction of "telling admissions"; (10) the Report's failure to conclude that Hunnicutt was significantly more qualified than Causey; (11) the Report's failure to find that Hunnicutt had amassed sufficient

4

circumstantial evidence to undermine DOR's stated reasons for failing to promote him; (12) the Report's failure to find that the interview process itself evinces pretext; (13) the Report's failure to find that the "hand holding" explanation was false; (14) the Report's failure to properly weigh evidence of Causey's training while supervisor of Nexus; and (15) the Report's failure to ascribe any weight to Causey's remark concerning tax supervision. The court will address each objection by subject matter. For the purposes of this order, the court will refer to the objections as numbered and described above.

II    Discussion

    A.    Hunnicutt's USERRA Claim

The Magistrate Judge found that the timing of the Nexus supervisor posting and Hunnicutt's deployment occurred sufficiently close in time to infer that Hunnicutt's military status motivated DOR's hiring decision. However, the Report also determined that because DOR articulated a valid reason for promoting Causey rather than Hunnicutt, and because Hunnicutt has not shown these reasons to be pretextual or false, Hunnicutt's claim should fail. Hunnicutt objects to this conclusion, and argues that the Magistrate Judge confused the USERRA and Title VII burdens, and asserts that DOR must do more than articulate, it must establish by a preponderance of the evidence that it would have made the same decision.

USERRA was enacted to protect the rights of veterans and members of the military services and must be broadly construed to in favor of its military beneficiaries. Hill v. Michelin N. Am., 252 F.3d 307, 312–13 (4th Cir. 2001). USERRA affords protection to

current and former service members by prohibiting discriminatory acts by their employers where military status is a motivating factor in an employment action, even if it is not the sole basis for the decision. Id. at 312. "If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the buden of proof to the employer, allowing the employer to avoid liability only if the employer can prove that the action would have been taken in the absence of the employee's military status." Id. (internal citation omitted). Whether an employee's military status motivated an employment action "may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action." Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1012–13 (Fed. Cir. 2001) (cited with approval in Hills v. Michelin, 252 F.3d 307).

As Hunnicutt's interview for the Nexus supervisor position occurred the day prior to his deployment and the employment action occurred during deployment, the court concurs in the Report's finding that Hunnicutt has established, pursuant to Sheehan, an inference of impermissible motivation pursuant to USERRA. Accordingly, the burden shifts to DOR to prove that it would have promoted Causey over Hunnicutt despite Hunnicutt's military status.

DOR argues that it determined to promote Causey without regard to Hunnicutt's military status, and that Causey was the superior applicant due to her proven leadership abilities. Specifically, Taylor determined that Causey's eight years of supervisory experience, his belief that she could effectively communicate with and motivate employees,

6

and her extensive dealings with the South Carolina Secretary of State's office exhibited stronger leadership skills than Hunnicutt. (Taylor Dep. 14:12–15:18.) Taylor represents that leadership ability weighed heavily on his decision because he wanted someone "that after a brief period of time pretty much [would] not need their hand held to set the direction for the section." (Id. at 15:12–14.) Taylor was looking for someone to run Nexus "on their [sic] own." (Id. at 15:16.) To that end, Taylor believed that Causey's abilities best met his needs. (Id. at 15:16–18.)

Taylor asserts that at the time of his decision he had known Hunnicutt and Causey for many years and supervised them both. He testified to Causey's reputation among DOR upper management "as the leading example for other supervisors"(Taylor Dep. 19:13–17), and Hunnicutt's competence as a tax examiner, analyst, and auditor. (Id. at 20:6–8.) Taylor asserts that his decision came down to the greater weight he attributed Causey's wealth of experience in a supervisory role versus Hunnicutt's lack of demonstrated leadership at DOR. (Id. at 20:8–13.) While Taylor "respected [Hunnicutt] as an excellent follower, excellent employee," Taylor believed that Hunnicutt lacked Causey's "vision and leadership qualities" that she had exhibited in "examining and exploring new areas, new processes, improvements in all those areas, and doing it and instructing others in a leadership role." (Id. 48:19–49:5.) Taylor also believed that he could capture more money for the state by selecting Causey as she could leverage her expertise gained in the corporate income section, an under-explored area which Taylor believed showed promise for the state's coffers. (Id. at 39:8–18.)

7

Hunnicutt argues that a combination of events and circumstances serve to create an inference that DOR discriminated against him on the basis of his military status. The court agrees that he has carried his burden for the reasons stated above. However, Hunnicutt has failed to effectively respond to or undermine the substantial evidence DOR presented in support of its assertion that it would have promoted Causey over Hunnicutt in any event. Nonetheless, the court will address Hunnicutt's objections by subject matter.

1. Burden Shifting Under USERRA and Relevance

Hunnicutt lodged a variety of objections to the Report as it addressed the USERRA claim. Hunnicutt asserts in his first objection that the Magistrate Judge did not appropriately apply the USERRA burden shifting framework. The court finds that, despite using the terms "articulate" and "pretext," the Report actually and properly concluded that DOR met its burden to prove that it would have hired Causey over Hunnicutt because she had more supervisory experience.

Hunnicutt spends much of his argument reiterating his position that he believes that the evidence shows discrimination based on his military status. However, the Report already found for Hunnicutt at this stage, and as noted above, the court agrees that Sheehan supports this finding. Because the court finds that Hunnicutt met his burden at the first stage of the USERRA inquiry, the court overrules objections 2a, 2b, 3a, 3b, 4, 5, 8, and 12 as irrelevant—they do not bear on whether DOR would have hired Causey over Hunnicutt despite impermissible motivation. The court also notes that objections 2a and 2b ground

themselves on a mistake of fact, as they asserts that February 9, 2007, was a Saturday. In fact, February 9, 2007, fell on a Friday, undermining any inference that interviews could not have taken place or recommendations issued that day.

        2.        Hunnicutt Seeks an Inference of Leadership Ability from His National Guard Activities

Objections 6, 7, and 10 object to the Report's failure to find that Hunnicutt had substantial supervisory experience by virtue his military activities. However, in the absence of better argument or additional evidence from Hunnicutt, the court fails to see how Hunnicutt's military supervision should operate to provide Taylor with knowledge of leadership qualities Hunnicutt appears to have failed to exhibit at DOR. Hunnicutt has not provided the court with evidence that he served in any supervisory role at DOR, took the lead on any project, nor displayed initiative or leadership in his role as an auditor. Without an example for Taylor to consider, the court is loathe to require Taylor to infer leadership skills from a role performed in an entirely different context when his first-hand perception suggests otherwise. Taking the evidence in the light most favorable to Hunnicutt, the court finds that he seeks an inference that does not logically follow from the evidence in the record. Accordingly, the court overrules objections 6, 7, and 10.

        3.        Ratliff's and Taylor's Remarks

Hunnicutt objects to the Report's finding that Ratliff's remark concerning a possible lawsuit was irrelevant. Hunnicutt alleges that Ratliff "encouraged" Hunnicutt to challenge Taylor's decision in federal court. (Pl. Decl. ¶ 22.) Like the Magistrate Judge, the court

finds this statement irrelevant in considering whether Taylor would have decided to hire Causey despite an inferred discriminatory motive under USERRA.

Likewise, Hunnicutt challenges the Report's affording little weight to Taylor's comment made to Hunnicutt that he had also been "screwed." The court agrees with the Report here as well, and finds that there is no indication that Taylor was referring to his military status or his sex when allegedly making such comment. Hunnicutt is only allowed a reasonable inference, not the best possible inference from a statement alleged. Accordingly, objection 9 is overruled.

### 4. Significance of Causey's Post-Selection Training

In objections 13, 14, and 15, Hunnicutt objects to the Report insofar as it fails to find Taylor's "hand holding" explanation false, gives weight to DOR's explanation of Causey's post-selection training, and fails to use Causey's statement concerning the importance of "knowing a tax" against DOR. Taking the facts in the light most favorable to Hunnicutt, the record reflects that Causey received substantial training in the Discover System and the Tax Master Program post selection. However, again, Hunnicutt seeks an inference unsupported by the record. Technical prowess and competency in Discovery System and Tax Master were not part of the job posting nor did they appear to figure in to the hiring calculus of Taylor.

This court is not a super-personal department. See, e.g., DeJarnette v. Corning, Inc., 133 F.3d 293 (4th Cir. 1998). Taylor, as the decision-maker, exercised his prerogative to favor softer leadership skills and has put forth substantial evidence of Causey's leadership

acumen, while pointedly highlighting Hunnicutt's status as an "excellent follower." Causey apparently needed and received substantial technical assistance after assuming her position, however no evidence in the record suggests that she received any leadership tutelage that would undermine Taylor's asserted reasons for hiring her. Accordingly, the court overrules objections 13 and 14.

Hunnicutt objects to the Report's failure to give adequate weight to Causey's statement to the effect of "in order to supervise a tax, you must know a tax." However, as stated above, technical mastery of the taxes sought to be managed did not appear in the job description and has not been articulated by Taylor as one of his considerations. Hunnicutt seeks to have the court serve as a super-personnel department and ascribe the opinions of the applicants to the needs of the decision-maker. The court is unwilling to assume such a position and overrules objection 15.

The court also notes that Taylor and Rogers, both as interviewers and Taylor as decision-maker, assert that Hunnicutt's military status played no role in their evaluation of his application and Taylor asserts that he did not consider it in deciding to hire Causey. DOR further asserts that during Hunnicutt's approximately twenty years at DOR, including the time at issue in this case, Hunnicutt admits he never experienced "any kind of hostility . . . because [he was] in the National Guard." (Pl. Dep. 62:7–17.)

B. Hunnicutt's Title VII Sex-Discrimination Claim

The Magistrate Judge found that while Hunnicutt has established a prima facie case

11

of sex discrimination, DOR has produced a legitimate nondiscriminatory reason for promoting Causey over Hunnicutt, and Hunnicutt has failed to show pretext. Hunnicutt filed a variety of objections highlighting alleged facts he contends establish pretext.

Title VII makes it unlawful for an employer to discriminate against an employee because of his sex. Hunnicutt argues that he was not promoted because of his sex. He may defeat summary judgment and establish a claim for sex discrimination through either (1) direct evidence or (2) circumstantial evidence, or both, that his sex was a motivating factor in DOR's decision to not promote him. Holland v. Washington Homes, Inc., 487 F.3d 208 (4th Cir. 2007). Hunnicutt proceeds solely under the second approach; he has not alleged any direct evidence of sex discrimination. Under the circumstantial, or pretext, framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the rules of engagement are as follows:

> the plaintiff employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). The Report found that the parties met their respective burdens at the first two steps, and found Hunnicutt's claim deficient at the third. At the third step, the "burden to demonstrate pretext [merges] with the ultimate burden of persuading the court that [Hunnicutt] has been the victim of intentional discrimination."

Holland, 487 F.3d at 214 (internal citation omitted). Hunnicutt may do this through showing that DOR's proffered explanation "is unworthy or credence." Id.

Hunnicutt, however, has not shown that DOR's reasons for hiring Causey were false. Specifically, he has not shown that Taylor did not believe that Causey possessed greater leadership traits and supervisory experience than Hunnicutt. Hunnicutt makes a number of objections to the Report's identical conclusion. The court find each unpersuasive, though will address them by subject matter.

   1.  The Timing and Process of the Interview

Objections 2a, 2b, 3b, 8, and 12 object to the Report's failure to find that the method and timing of the interview evince pretextual actions masking pernicious gender discrimination. DOR asserts that the timing of the interview occurred in the manner it did to accommodate Hunnicutt and to ensure that he had the ability to interview in person, rather than over the phone from deployment. The court finds that Hunnicutt's imminent deployment and bout of illness, while unfortunate, do not appear to undermine Taylor's legitimate and nondiscriminatory reasons for hiring Casuey. Even if the entire interview process was a sham designed as a vehicle to install Causey as supervisor of Nexus, Hunnicutt has failed to show how such a ruse was motivated by his gender or that Taylor's stated reasons for selecting Causey do not deserve credence. Preselection or cronyism cannot serve as the bases for a Title VII claim. "The duty of the federal courts . . . under Title VII . . . is to redress racial, sexual, religious and national origin discrimination in employment," not

allegations of favoritism. Holder v. City of Raleigh, 867 F.2d 823 (4th Cir. 1989). Accordingly, objections 2a, 2b, 3b, 8, and 12 are overruled as they apply to Hunnicutt's Title VII claim.

2. The Significance of Hunnicutt's Military Activities

In addressing Hunnicutt's objections concerning the significance of his military activities, the court adopts its analysis as set forth in Part II.A.2 above. Accordingly, the court finds that Hunnicutt's military activities do not undermine Taylor's assessment that Causey possessed demonstrated leadership abilities and that Hunnicutt did not. Furthermore, the record does not reflect that Hunnicutt brought military supervision experience to the attention of Taylor and explained how it applied to supervision at DOR. Objections 6, 7, and 10 are overruled as they apply to Hunnicutt's Title VII claim.

3. Ratliff's and Taylor's Remarks

Hunnicutt objects to the Report's treatment of certain "telling admissions." The alleged remark by Ratliff that Hunnicutt should file suit in federal court and Taylor's alleged remark that he felt that he did not receive promotions he believed were owed him are again offered by Hunnicutt as evidence of pretext, despite the Report's finding to the contrary. As the significance of these remarks was addressed above, the court herein incorporates its analysis in Part II.A.3 above by reference. However, the court also finds that these alleged statements reflect only the personal opinions of the declarants and notes that neither bear on whether Taylor honestly believed that Causey possessed superior qualifications as fixed by

Taylor. "Ultimately, it is the perception of the decisionmaker which is relevant" and a court's focus must remain on whether the decisionmaker "believed its stated reason to be credible." Holland, 487 F.3d 208, 217. As neither alleged statement appears to emanate from the sole decisionmaker, purports to echo his views, or provides any reasonable inference of gender discrimination, the court finds the statements irrelevant. Accordingly, the court overrules objection 9.

### 4. Hunnicutt's Relocation to a Different Desk

Hunnicutt objects to the Report's failure to draw a conclusion of pretext from his relocation to a different desk shortly before the Nexus position was posted. However, objection 5 does not provide any reasonable inference of sex discrimination nor has Hunnicutt adequately explained how it could. Relocating Hunnicutt shortly before the job was posted may provide a tenuous inference of preselection, but preselection without any evidence of a prohibited motive fails to provide support for Hunnicutt's Title VII claim. Accordingly, objection 5 is overruled.

### 5. Hunnicutt's Catch-All Objection

Hunnicutt objects to the Report's failure to find that he has put forth sufficient evidence of pretext to discredit Taylor and survive summary judgment. Specifically, Hunnicutt asserts that DOR's different reasons for failing to promote Hunnicutt provide strong evidence of pretext for discrimination. The Fourth Circuit has held that inconsistent explanations of employment actions are probative of pretext, but that different or varying

explanations that are not materially inconsistent are not.  Compare Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 646–647 (4th Cir. 2002), and Baldwin v. England, 137 Fed. App'x 561, 564–65 (4th Cir. 2005) (unpublished) ("the Navy's proffer of consistent, though varying, reasons that Baldwin could not be promoted fails to support an allegation that any of those reasons are false, much less that all of them are a pretext for discrimination").  The court has reviewed the record, including DOR's letter to SHAC, and contrary to Hunnicutt's representation, the initial internal documents are represented to state that Taylor promoted Causey because of her "years of supervisory experience at DOR and Nexus certification."  The letter goes on to largely repeats this statement, but it's meaning is fully fleshed out in Taylor's deposition, which the court finds congruent with Taylor's brief "years of supervisory experience" statement. Hunnicutt's statement to the contrary falls flat for lack of evidentiary support.  Accordingly, because Hunnicutt's objection is not grounded in the record and because the reasons offered by DOR as to why it promoted Causey are entirely consistent, if varying in depth and detail, objection 11 is overruled.

> 6. The Significance the Report Attributed to Causey's Post-Selection Training and her Statement Concerning "Knowing a Tax"

In objections 13, 14, and 15, Hunnicutt objects to the Report insofar as it fails to find Taylor's "hand holding" explanation false, gives weight to DOR's explanation of Causey's post-selection training, and fails to use Causey's statement concerning the importance of "knowing a tax" against DOR.  Taking the facts in the light most favorable to Hunnicutt, the record reflects that Causey received substantial training in the Discover System and the Tax

Master Program. The court addressed these objections as they relate to the USERRA claim above and much of that analysis applies here. To reiterate, the court finds that Taylor's hand-holding explanation deserves credence as her training appears to pertain to technical skills rather than the leadership ability Taylor prized in the selection process, and finds Causey's "knowing a tax" statement irrelevant. Accordingly, the court overrules objections 13, 14, and 15 as they do not evidence pretext for discrimination.

III. Conclusion

Based on the foregoing, the Court overrules Hunnicutt's objections [dkt. # 41], adopts the Report [dkt. # 36] in full as it pertains to the Title VII claim and consistent with this order as it relates to the USERRA claim. DOR's motion for summary judgment [dkt. # 24] is hereby granted.

IT IS SO ORDERED.

March 31, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge